UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHRISTOPHER E. DORSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-cv-103-HBG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment [Doc. 20]. Christopher E. Dorsey ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.      **PROCEDURAL HISTORY**

On June 8, 2015, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on April 15, 2015. [Tr. 13, 159–64]. After his application was denied initially

and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 96]. A hearing was held on April 26, 2017. [Tr. 29–57]. On May 25, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 15–24]. The Appeals Council denied Plaintiff's request for review on February 7, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on March 13, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since June 8, 2015, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: obesity, affective disorder, posttraumatic stress disorder, paranoid personality disorder, and borderline intellectual functioning (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except limited to simple routine repetitive tasks; performed in a work environment free of fast paced work involving only simple work related decisions, and with few, if any, workplace changes; no interaction with the public; only occasional interaction with coworkers and supervisors; and no complex written or verbal communication required.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

>6. The claimant was born on March 21, 1967 and was 48 years old, which is defined as a younger individual age 18–49 on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).
>
>7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
>8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).
>
>10. The claimant has not been under a disability, as defined in the Social Security Act, since June 8, 2015, the date the application was filed (20 CFR 416.920(g)).

[Tr. 17–23].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

4

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V.  ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, as he claims that the RFC does not properly reflect the limitations assessed by consultative psychological examiner Kathryn Smith, Ph.D., despite the ALJ's assignment of

5

significant weight to Dr. Smith's opinion. [Doc. 17 at 10–14]. Plaintiff contends that Dr. Smith's opinion that Plaintiff had a marked limitation in his ability to interact with people does not support the RFC finding that Plaintiff could interact occasionally with coworkers and supervisors. [*Id.* at 11]. Therefore, Plaintiff challenges "[t]he ALJ's decision to disregard Dr. Smith's opinion regarding [Plaintiff's] mental health limitation on his ability to interact with people based on his 'admitted daily activities and his interactions with his healthcare providers,'" as the ALJ does not identify specific daily activities or interactions with health care providers, and that Plaintiff's "interactions with his healthcare providers provide no support for the [ALJ's conclusion] that he could occasionally interact with coworkers and supervisors." [*Id.* at 11, 13].

However, the Commissioner maintains that the ALJ properly considered the record as a whole to find that Plaintiff could occasionally interact with coworkers and supervisors. [Doc. 19 at 13]. The Commissioner also noted that the ALJ found Plaintiff's allegations inconsistent with the record as a whole, considered Plaintiff's daily activities and level of treatment, and reviewed Plaintiff's appropriate behavior while interacting with medical providers. [*Id.* at 13–18]. However, Plaintiff replied that the ALJ did not specifically state what daily activities or interactions with medical providers were in contrast with Dr. Smith's opined limitations. [Doc. 20 at 1–2].

Dr. Smith consultatively examined Plaintiff on July 24, 2015. [Tr. 301–06]. Dr. Smith performed a clinical interview with mental status exam, as well as administered IQ testing through the Wechsler Adult Intelligence Scale-IV ("WAIS") and the Wide Range Achievement Test-IV ("WRAT"). [Tr. 301]. Plaintiff reported anger problems and a history of mental problems stemming from child abuse, but that he had not received any mental health treatment. [*Id.*]. Testing through the WAIS revealed a Verbal Comprehension score of 66, a Perceptual Reasoning

score of 86, a Working Memory score of 77, a Processing Speed score of 79, and a Full Scale IQ of 72. [Tr. 304]. Dr. Smith noted that these scores were in the extremely low to low average range. [*Id.*]. On the WRAT, Plaintiff obtained scores of a 7.4 grade level in Word Reading, a 6.2 grade level in Sentence Comprehension, and 4.0 grade level in Spelling, and 5.6 grade level in Math Computation. [*Id.*].

Dr. Smith diagnosed Plaintiff with major depressive disorder, chronic moderate; paranoid personality disorder; borderline intellectual functioning; and cannabis use disorder, early remission. [Tr. 305]. Accordingly, Dr. Smith opined mild to moderate limitations in the ability to understand, remember, and carry out simple instructions; moderate to marked limitations in the ability for complex instructions; mild limitations in the ability to make simple judgments; moderate limitations in the ability for complex judgments; moderate limitations in the ability to sustain concentration and persist; marked limitations in the ability to interact appropriately with others; and moderate limitations in the ability to adapt to changes and requirements. [*Id.*].

The ALJ reviewed Dr. Smith's opinion in great length [Tr. 21], and ultimately assigned significant weight to her opinion [Tr. 21–22]. However, the ALJ specifically noted that he found that Plaintiff has the ability to interact occasionally with coworkers and supervisors based on Plaintiff's admitted daily activities and interactions with health care providers. [Tr. 22]. Plaintiff challenges this finding, as the ALJ did not identify what daily activities or interactions with health care providers supported his reasons, and it was in contrast to Dr. Smith's opinion—which the ALJ assigned significant weight to. [Doc. 17 at 10–13].

As an initial matter, the Court notes that when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by

substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–cv–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)).

Dr. Smith did not opine that Plaintiff was unable to have any interactions with coworkers and supervisors. Nor did she assess a functional limitation regarding Plaintiff's ability to so interact. Rather, Dr. Smith found that Plaintiff, generally, had a marked limitation in social interaction. This Court recently addressed a similar argument and found that "a marked limitation is not synonymous with a specific functional restriction or RFC." *Haggard v. Berryhill*, No. 3:17-CV-99-DCP, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018) (finding that Plaintiff "has not demonstrated why an RFC of occasional interaction with coworkers and the public, and direct, non-confrontational supervision, fails to accommodate Plaintiff's marked limitation in social interactions"). In *Haggard*, the Court addressed Plaintiff's argument that despite giving great weight to a consultative examiner's opinion, which included an assessed marked limitation in social interaction, the ALJ improperly limited Plaintiff's RFC to only occasional interaction with coworkers and the public with direct, non-confrontational supervision. *Id.* at *7. While agency rulings define a "marked limitation" as a "substantial loss of ability," a "'[s]ubstantial loss' cannot be precisely defined" because "[i]t does not necessarily relate to any particular adjective, number, or percentage." *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *6 (E.D. Tenn. July 10, 2017) (quoting Soc. Sec. Rul. 96-9-p, 1996 WL 374185, at *9 (July 2, 1996); Soc. Sec. Ru. 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985); and Program Operation Manual System DI.

8

25020.010.A.3. Mental Limitations).

Therefore, Plaintiff "summarily concludes that a marked limitation in social interactions means that she could only have less than occasional interaction with coworkers and supervisors." *Haggard*, 2018 WL 6003862, at *7; *see, e.g.*, *Shinlever*, 2017 WL 2937607, at *6 ("Substantial evidence supports a finding that interacting with co-workers and supervisors on an occasional basis—that is, very little up to one-third of the workday, Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)—and no interaction with the public accommodates the Plaintiff's 'marked' limitation."); *Miller v. Colvin*, No. 3:15-CV-294-DW, 2016 WL 154127, at *8-9 (W.D. Ky. Jan. 12, 2016) (finding an RFC that limited the plaintiff to "no interaction with the general public and only occasional, but superficial, interaction with co-workers and supervisors combined with no close tandem work" properly accounted for the plaintiff's marked limitation in social functioning); *Libertore v. Comm'r of Soc. Sec.*, No. 5:11 CV 1245, 2012 WL 3815622, at *11 (N.D. Ohio July 26, 2012) ("To the contrary, a restriction to jobs without arbitration, confrontation, or negotiation, and further involving only superficial interpersonal interaction with the public or co-workers, is a significant enough limitation to sufficiently accommodate for Claimant's marked social functioning difficulties."), *adopted sub nom.*, *Libertore v. Astrue*, No. 5:11 CV 1245, 2012 WL 3815626 (N.D. Ohio Sept. 4, 2012).

Moreover, in the present case, the ALJ did detail why Plaintiff could interact occasionally with coworkers and supervisors, despite giving significant weight to Dr. Smith's opinion, including her assessment that Plaintiff had a marked limitation in his ability to interact with people. [Tr. 22]. While Plaintiff claims that the ALJ failed to identify which specific daily activities supported his finding, the ALJ reviewed Plaintiff's daily activities throughout the opinion. Specifically, directly before considering Dr. Smith's opinion, the ALJ discussed how Plaintiff

9

reported the ability to shop in stores, talk with his brother, use public transportation, attend doctors' appointments, and go out alone. [Tr. 21].

Additionally, the ALJ stated that Plaintiff's ability to interact occasionally with coworkers and supervisors was supported by his interactions with his health care providers. [Tr. 22]. Plaintiff correctly states that the ALJ did not detail specific interactions with medical providers. Plaintiff challenges the overall use of his interactions with healthcare providers as being indicative of his ability to interact with coworkers and supervisors. [Doc. 17 at 11–13]. The Court cautions against the use of a claimant's interactions with healthcare providers when assessing the capability to interact appropriately with coworkers and supervisors. *See Daugherty v. Comm'r of Soc. Sec.*, No. 1:16-cv-898, 2017 WL 3987867, at *8 (S.D. Ohio July 20, 2017) (finding error in an ALJ's failure to include a specific limitation from examining consultant's opinion, as "long term familial relationships that predate Plaintiff's alleged disability, or relationships with her medical providers, are not equivalent to the type of social interactions that Plaintiff would encounter in the workplace"), *report and recommendation adopted by*, 2017 WL 3965326 (S.D. Ohio Sept. 8, 2017); *see, e.g.*, *Castrovianci v. Comm'r of Soc. Sec.*, No. 2:17-cv-179, 2018 WL 4100956, at *10 (M.D. Fla. Aug. 2, 2018) ("The ALJ also cited Plaintiff's interactions with his medical providers in discounting greater than moderate limitations, as detailed above . . . This suggests the opposite conclusion; Plaintiff may have only had social difficulties in the workplace."), *report and recommendation adopted by*, 2018 WL 5084661 (M.D. Fla. Aug. 28, 2018).

However, in the present case, the ALJ's RFC determination is supported by substantial evidence, as Dr. Smith did not assess a specific limitation with respect to Plaintiff's social interaction. *Cf. Daugherty*, 2017 WL 3987867, at *8. Additionally, the ALJ did "incorporate [Dr. Smith's] marked limitation in social interactions" through the RFC including simple, routine and

10

repetitive tasks in an environment free of fast paced work, no interaction with the public, and only occasional interaction with coworkers and supervisors. *See Haggard v. Berryhill*, No. 3:17-CV-99-DCP, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018). Lastly, the ALJ discussed Plaintiff's daily activities and assigned significant weight to the opinions of the nonexamining state agency physicians, Rebecca Joslin Ed.D. and P. Jeffrey Wright Ph.D., while noting that although they used the old paragraph B criteria, their opinions supported the RFC determination. [Tr. 22]. Dr. Joslin and Dr. Wright opined that Plaintiff was moderately limited in the ability to interact appropriately with supervisors and coworkers. [Tr. 65, 79]; *see Lynette P. v. Soc. Sec. Admin.*, No. 1:17-cv-311-JDL, 2018 WL 2219085, at *4 (D. Me. May, 15 2018) (holding that the ALJ's finding that the plaintiff could interact appropriately with supervisors and coworkers was supported by substantial evidence, as the ALJ assigned great weight to the opinions of the nonexamining state agency physicians, and pointed to "Plaintiff's ability to maintain friendships, communicate effectively with others (notably care providers), the lack of any report in the treatment records of an impairment related to speech or communication, and Plaintiff's ability to use public transportation when necessary to support his conclusion"), *report and recommendation adopted by*, 2018 WL 3212005 (D. Me. June 29, 2018).

Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence, and Plaintiff's allegation of error does not constitute a basis for remand.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge